# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN LEWIS, JR.,<br><br>                         Petitioner,<br>  vs.<br><br>JAMES E. TILTON, Secretary of the California Department of Corrections and Rehabilitation; JERRY BROWN, Attorney General of the State of California,<br><br>                        Respondents. | CASE NO. 07cv0831-H (RBB)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS** |

On July 9, 2007, petitioner John Lewis, Jr. ("Petitioner"), a state prisoner proceeding *pro se*, filed an amended petition for writ of habeas corpus ("Petition"), challenging his California sentence pursuant to 28 U.S.C. § 2254. (Doc. No. 4.) Respondent submitted an answer on November 2, 2007, and Petitioner filed a traverse on December 13, 2007. (Doc. Nos. 12, 15.) On June 17, 2008, the magistrate judge filed a Report and Recommendation recommending that this Court deny the Petition. (Doc. No. 16.) Petitioner has not filed objections to the Report and Recommendation. For the reasons set forth below, the Court ADOPTS the report and recommendation and DENIES the petition for writ of habeas corpus.

///

///

///

## Background

**A.     Factual Background**

On January 2, 2001, Lewis was watching his two young children, four-month-old Jace and two-year-old Jalen. People v. Lewis, 120 Cal. App. 4th 837, 842, 15 Cal. Rptr. 3d 891, 893-94 (Ct. App. 2004). It was the first day Petitioner had been alone with both of his children. His wife, Tricia, had been on maternity leave but resumed work that day. Id. at 842, 15 Cal. Rptr. 3d at 894.

Tricia returned home in the early afternoon. Id. As she was changing Jace's diaper, she noticed red marks on his thigh, and his scrotum was swollen. Id. Tricia took Jace to the hospital. Id. There, a nurse examined Jace and noted his testicles were swollen and caused him pain. Id. About forty minutes after the nurse's evaluation, a doctor examined Jace. Id. Jace's penis was swollen, but his testicles were no longer swollen or red. Id. After a neurological examination failed to show any problems with Jace, Tricia took him home. Id.

The following afternoon, January 3, 2001, Lewis was again watching the two children, Jace and Jalen, while Tricia was at work. Id. at 842-43, 15 Cal. Rptr. 3d at 894. He called 911 at 1:08 p.m., telling the dispatch officer that Jace had slipped in the bathtub and was no longer breathing. Id. Lewis then performed CPR on Jace. Id. at 843, 15 Cal. Rptr. 3d at 894.

When the police and paramedics arrived, they noted several conditions in the apartment that were inconsistent with Petitioner's drowning story. Id. Jace was dry; the spot on the floor where he had been laying was dry; and the baby bathtub was dry and propped against a wall. Id. at 843-44, 15 Cal. Rptr. 3d at 894-95. The paramedic at the scene noted that Jace was not breathing and had no pulse. Id. at 843, 15 Cal. Rptr. 3d at 894. Jace's only symptom consistent with a drowning was the fact that he was not breathing. Id. at 843, 15 Cal. Rptr. 3d at 894-95.

Jace was taken to the hospital, and upon arrival, he was still not breathing. Id. at 844, 15 Cal. Rptr. 3d at 895. Because the doctors were able to restore Jace's heartbeat, he was moved to Children's Hospital. Id. at 844, 15 Cal. Rptr. 3d at 895. There, the examining doctor noted Jace had a swollen scrotum, a bruise on his abdomen which looked like finger marks,

1  fixed and dilated pupils which indicated a severe brain injury, a bulging soft spot on his head
2  which indicated swelling of the brain, retinal hemorrhaging in his eyes, and no fluid in his
3  lungs. Id. at 844-45, 15 Cal. Rptr. 3d at 895. Further tests revealed Jace had three healing rib
4  fractures and one acute rib fracture. Id. at 845, 15 Cal. Rptr. 3d at 896.

5  Jace died the following day. Id. The hospital conducted an autopsy, which identified
6  a variety of internal injuries. Id. Jace had a large amount of fresh blood in his skull, which
7  indicated he had a "one- to three-month-old subdural hematoma and two acute hematomas."
8  Id. The fresh blood was evidence of a recent injury. Id. Jace had an acute and prior subdural
9  hematoma around his spinal cord. Id. There was also acute subdural bleeding at the base of
10 the skull. Id. Furthermore, Jace had "extensive subarachnoid hemorrhages on the right side
11 of his brain and less extensive subarachnoid hemorrhages on the left side." Id.

12 The autopsy concluded Jace's death was caused by "blunt force head injuries." Id. at
13 846, 15 Cal. Rptr. 3d at 896. His injuries were inconsistent with drowning. Id. The brain
14 trauma was likely caused by intense shearing and rotational forces on his brain. Id. The
15 autopsy report further concluded the injury occurred near the time Petitioner dialed 911. Id.

16 At the hospital, before Jace's death, Petitioner described how Jace was injured. Id. at
17 845, 15 Cal. Rptr. 3d at 895. Lewis claimed he was giving Jace a bath, and he left the room
18 to get a towel. Id., 15 Cal. Rptr. 3d at 896. When he returned, Jace was lying under water in
19 the baby bathtub. Id. Lewis told the officers he shook Jace in an effort to revive him. Id. at
20 845, 15 Cal. Rptr. 3d at 896.

21 In explaining Jace's swollen testicles from January 2, 2001, Petitioner told the officers
22 he was running while holding Jace in his arms like a football, and he tripped and fell. Id. at
23 844, 15 Cal. Rptr. 3d at 895. As Petitioner fell, he grabbed Jace's crotch, and Jace landed on
24 Lewis's body. Id. At trial, however, Lewis explained that his body landed on Jace. Id. at 846,
25 15 Cal. Rptr. 3d at 897.

26 Because the jury was unable to reach a verdict after his first trial, Lewis was retried.
27 Id. at 842, 15 Cal. Rptr. at 893. During his second trial, Petitioner no longer asserted that Jace
28 drowned. Id. at 847, 15 Cal. Rptr. 3d at 897. He claimed instead that Tricia accidentally

1  dropped Jace in October 2000, which explained his older injuries. Id. When Lewis fell with
2  Jace while running, Jace's fall re-injured him. Thus, Petitioner argued that it was the
3  combination of the original fall with Tricia and the subsequent fall on January 2, 2001, which
4  caused Jace's death. Id.

**B.     Procedural Background**

Petitioner was charged with assault on a child by means likely to produce great bodily harm in violation of California Penal Code section 273ab. (Clerk's Transcript (CT) at 1.) On July 31, 2002, a jury found Petitioner guilty of violating California Penal Code section 273ab. (CT at 123.) Petitioner was sentenced to twenty-five years to life. (CT at 73.)

Petitioner appealed his conviction and sentence to the California Court of Appeal on the following grounds: (1) trial court error in failing to give accomplice instructions, (2) trial court error in finding Petitioner presumptively ineligible for probation, and (3) cruel and unusual punishment under the California and United States Constitutions. Lewis, 120 Cal. App. 4th at 848, 850-51, 854-55, 15 Cal. Rptr. 3d at 897-98, 899-900, 903. On July 19, 2004, the California Court of Appeal determined that Petitioner was not entitled to relief on ground one (accomplice instructions) or ground three (cruel and unusual punishment). Id. at 850, 856, 15 Cal. Rptr. 3d at 899, 904. The court granted relief on ground two (probation eligibility) and remanded for resentencing. Id. at 854, 15 Cal. Rptr. 3d at 902. The court of appeal concluded that the trial court improperly assumed Lewis was presumptively ineligible for probation. Id. Specifically, on remand the trial court was to determine whether Lewis intended to inflict great bodily injury. If he did, Petitioner would be presumptively ineligible for probation. Id. If Petitioner lacked that intent, he would be eligible for probation. Id.

On remand, Petitioner argued for probation. (CT at 3-10.) The trial court denied his request. It first found Petitioner did not have the specific intent to inflict great bodily harm on Jace, so he was not presumptively ineligible for probation. (Lodgment 8 at 46-47.) Nevertheless, the court resentenced Petitioner to twenty-five years to life. (Lodgment 8 at 52.) The trial court reasoned that the sentence, while severe, was justified because Petitioner committed multiple episodes of violence against Jace, he showed incomplete remorse, and he

posed a danger to future children. (Lodgment 8 at 47-51.) The court noted, however, that the parole board should consider Petitioner for parole as soon as he is eligible. (Lodgment 8 at 51.)

Lewis appealed again, claiming that his sentence amounted to cruel and unusual punishment under the California and United States Constitutions. (Lodgment 6 at 14-15.) The court of appeal found that the evidence presented at resentencing "pertinent to the cruel and unusual punishment inquiry was [not] substantially different from that presented at his first hearing..." (Lodgment 2 at 10.) Consequently, the court declined to reexamine whether Petitioner's sentence constituted cruel and unusual punishment. (Lodgment 2 at 10.)

Petitioner filed a petition for review in the Supreme Court of California. (Lodgment 3.) He alleged that the appellate court incorrectly applied the law of the case doctrine. (Lodgment 3 at 2.) He also claimed his sentence violated the ban on cruel and unusual punishment contained in the California and United States Constitutions. (Lodgment 3 at 6.) The California Supreme Court denied the petition for review.

On May 8, 2007, Lewis filed a petition for writ of habeas corpus in this Court. The Petition was dismissed without prejudice on May 11, 2007, but Lewis was granted leave to file an amended petition by July 9, 2007. Petitioner subsequently submitted a First Amended Petition, which was filed <u>nunc</u> <u>pro</u> <u>tunc</u> to July 9, 2008. After receiving an extension of time, Respondent filed an answer on November 2, 2007. Petitioner filed his reply <u>nunc</u> <u>pro</u> <u>tunc</u> to December 13, 2007.

## **Standard of Review**

Petitioner filed his Petition after April 24, 1996. The Petition is therefore subject to the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996. 28 U.S.C. § 2244. AEDPA sets forth the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a); see also Hernandez v. Ylst, 930 F.2d 714, 719 (9th Cir. 1991).

To present a cognizable federal habeas corpus claim, a state prisoner must allege his conviction was obtained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner must charge the state court with a violation of his federal constitutional rights. Hernandez, 930 F.2d at 719; Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990); Mannhalt v. Reed, 847 F.2d 576, 579 (9th Cir. 1988). Federal courts may grant habeas relief only to correct errors of federal constitutional magnitude. Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989) (stating that federal courts do not review errors of state law unless they rise to the level of a constitutional violation).

The state court's decision will only be disturbed if it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Relief may also be granted if the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding." 28 U.S.C. § 2254(d)(2). Finally, the state court's factual findings are presumed to be correct; this presumption may be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In Lockyer v. Andrade, 538 U.S. 63 (2003), the Supreme Court stated that "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) -- whether a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law." Id. at 71 (citation omitted). In other words, a federal court is not required to review the state court decision de novo. Id. Rather, a federal court can proceed directly to the reasonableness analysis under § 2254(d)(1). Id.

Section 2254(d)(1) identifies only the Supreme Court as the source of clearly established rules. A writ may issue only when the state court decision is contrary to, or involved an unreasonable application of, an authoritative decision of the Supreme Court. See Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).

> [A] state court decision is "contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from . . . precedent."

Andrade, 538 U.S. at 73 (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)) (citing Bell v. Cone, 535 U.S. 685, 694 (2002)). A state court unreasonably applies federal law if its application is "objectively unreasonable," which is "more than [being] incorrect or erroneous." Id. at 75.

## Discussion

The issue presented in the Petition is whether Petitioner's sentence of twenty-five years to life amounts to cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Petitioner claims the sentence is grossly disproportionate to his crime and mental culpability. (Doc. No. 15 at 8-9.)

**A.    The California Court of Appeal Decisions**

To decide this matter, this Court must review the "last reasoned" state court decision. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). Here, the California Supreme Court summarily denied Petitioner's petition for review. (Lodgment 4 at 1.) This Court will therefore examine the most recent reasoned opinion of the California Court of Appeal.

During Petitioner's first appeal, the California Court of Appeal analyzed the constitutionality of California Penal Code section 273ab in the abstract, as well as applied to Petitioner. Lewis, 120 Cal. App. 4th at 855-56, 15 Cal. Rptr. 3d at 903-04. The court of appeal considered three factors in determining whether the sentence was unconstitutional in the abstract: "(1) the nature of the offense, (2) a comparison with the punishment imposed for more serious crimes in California, and (3) a comparison with the punishment imposed for the same or similar offenses in other jurisdictions." Id. at 855, 15 Cal. Rptr. 3d at 903.

The California Court of Appeal found that Petitioner's offense was serious, involving

the death of a child by means of a violent assault. <u>Id.</u>  The appellate court concluded that the punishment was not grossly disproportionate to punishment for other offenses. <u>Id.</u> at 856, 15 Cal. Rptr. 3d at 904.  The court noted that under California law, the more serious crime of first-degree felony murder also did not require intent to kill, and neither did the three-strikes law, both of which provide for sentences as severe as Petitioner received. <u>Id.</u>  Analysis of the third factor was not possible because the court did not find any statutes in other states analogous to section 273ab. <u>Id.</u>  The court of appeal therefore concluded that a sentence of twenty-five years to life is not grossly disproportionate to the crime of assaulting a child by means likely to cause great bodily injury and death. <u>Id.</u>

The appellate court next analyzed the sentence as applied to Petitioner. <u>Id.</u>  The court of appeal explained that even if a sentence is theoretically constitutional, it may be unconstitutional as applied to a particular defendant if "the punishment shock[s] the conscience and offends fundamental notions of human dignity." <u>Id.</u> (quoting <u>People v. Cox</u>, 30 Cal. 4th 916, 970, 70 P.3d 277, 310, 135 Cal. Rptr. 2d 272, 312 (2003)).  The court concluded that although Petitioner was young and did not have a criminal record, the sentence was not grossly disproportionate to his culpability in light of "the amount of force required to cause four-month-old Jace's fatal head injuries and the amount of anger and loss of control that led to the assault..." <u>Id.</u>

On remand, Petitioner was again sentenced to twenty-five years to life. (Lodgment 2 at 10.)  Petitioner again appealed his sentence; however, the court of appeal did not consider the cruel and unusual punishment claim for a second time. (Lodgment 2 at 10.)  The court of appeal declined to review the claim under the law of the case doctrine. (Lodgment 2 at 10.)  Because the California Court of Appeal's most recent decision does not analyze Petitioner's cruel and unusual punishment claim, this Court will examine the court of appeal's first reasoned decision, reported as <u>People v. Lewis</u>, 120 Cal. App. 4th 837, 15 Cal. Rptr. 3d 891 (Ct. App. 2004).

**B.     Eighth Amendment Cruel and Unusual Punishment Standard**

The Eighth Amendment prohibits punishments that "'involve the unnecessary and

1  wanton infliction of pain...'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Gregg v.
2  Georgia, 428 U.S. 153, 173 (1976)).  It "prohibits not only barbaric punishments, but also
3  sentences that are disproportionate to the crime committed." Solem v. Helm, 463 U.S. 277,
4  284 (1983); see also Lockyer v. Andrade, 538 U.S. 63, 72 (2003).  This principle "does not
5  require strict proportionality between crime and sentence.  Rather, it forbids only extreme
6  sentences that are 'grossly disproportionate' to the crime." Harmelin v. Michigan, 501 U.S.
7  957, 1001 (1991) (Kennedy, J., concurring) (citing Solem, 463 U.S. at 288).

8       In Solem, the Supreme Court implemented a three factor analysis.  The defendant in
9  Solem was convicted of "uttering a 'no account' check for $100" and sentenced to life in
10 prison without parole under South Dakota's recidivist statute. Id. at 279-81.  The Supreme
11 Court found the sentence unconstitutional because the defendant's crime involved "relatively
12 minor criminal conduct," and the sentence was disproportionate to the crime. Id. at 303.  The
13 Court outlined three factors to consider in determining disproportionality: "(i) the gravity of
14 the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in
15 the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in
16 other jurisdictions." Id. at 292.  The Court noted that these factors are not exclusive and courts
17 may properly consider other factors in evaluating sentences. See id. at 294.

18      Similarly, in Andrade, the Court addressed the factors to consider in evaluating the
19 Eighth Amendment.  In Andrade, the defendant was convicted of stealing videotapes worth
20 approximately $150.00. Andrade, 538 U.S. at 66-68.  He was sentenced to two consecutive
21 terms of twenty-five years to life under California's Three Strikes Law. Id. at 68.  The Ninth
22 Circuit granted habeas relief concluding the state court unreasonably applied clearly
23 established federal law when it did not consider the Solem factors. Id. at 69-70.  The Supreme
24 Court overturned the Ninth Circuit's opinion, finding that the Ninth Circuit applied a clear
25 error standard rather than the more deferential "unreasonable application"  standard of
26 AEDPA. Id. at 75-76.  In reaching this conclusion, the Court noted that it had "not established
27 a clear or consistent path for courts to follow." See id. at 72.  Accordingly, it was not contrary
28 to clearly established law for the state court evaluating gross disproportionality to apply the

factors and reasoning set forth in Supreme Court precedents that had not been overruled. See id. at 73-74.

**C.     The State Court Decision Was Not Contrary to Clearly Established Law**

A state court's decision is contrary to clearly established law if it incorrectly identifies the applicable Supreme Court principle in its analysis. Williams, 529 U.S. at 405-06. The Supreme Court has acknowledged that the only clearly established law in regard to cruel and unusual punishment for term of years sentences is the gross disproportionality principle. Andrade, 538 U.S. at 72. Here, the California Court of Appeal correctly identified this principle, stating that a sentence will be unconstitutional under the Eighth Amendment if there is a gross disproportionality "'between the offense and the offender and the punishment.'" Lewis, 120 Cal. App. 4th at 855, 15 Cal. Rptr. 3d at 903 (quoting People v. Norman, 109 Cal. App. 4th 221, 230, 134 Cal. Rptr. 2d 652, 657-58 (Ct. App. 2003)). By correctly applying this principle, the state court did not "contradict[] the governing law set forth" in prior Supreme Court cases. Williams, 529 U.S. at 405.

A state court decision is also contrary to clearly established federal law if the state court encountered a set of facts materially indistinguishable from a relevant Supreme Court case but arrived at different result. Williams, 529 U.S. at 405. Here, Petitioner was convicted of a violent crime and sentenced as a first-time offender. As such, Supreme Court decisions analyzing sentences in recidivist cases are materially distinguishable from Petitioner's case. Supreme Court decisions examining sentences for first-time offenders are also distinguishable from Petitioner's case because those cases involved nonviolent offenses, such as possession of drugs. See Davis, 454 U.S. at 371 (1982) (upholding sentence of forty years and $20,000 fine for possession of nine ounces of marijuana); Harmelin, 501 U.S. at 961 (upholding sentence of life without parole for possession of 672 grams of cocaine). Moreover, the Supreme Court has never found a term of years sentence applied to a violent, first-time offender to constitute cruel and unusual punishment. Thus, this Court cannot say the state court confronted facts that were "materially indistinguishable" from a relevant Supreme Court decision yet came to a different conclusion. See Williams, 529 U.S. at 405-06.

**D.     The State Court's Application of the Proportionality Principle Was Not Objectively Unreasonable**

Petitioner asserts the court of appeal erred by finding the law of the case doctrine precluded it from reconsidering the cruel and unusual punishment claim. (Doc. No. 3.) Petitioner also contends the court of appeal erroneously found his sentence did not violate the California Constitution. (Doc. No. 3 at 4.) The interpretation of the California Constitution raises issues of state law. A state court decision regarding state law "binds a federal court sitting in habeas corpus." Bradshaw v. Richie, 546 U.S. 74, 76 (2005) (per curiam). Like collateral estoppel and res judicata, law of the case questions are matters of state law. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 83 (1984) ("[I]ssues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the state where the judgment was rendered.") (quoting Allen v. McMurray, 449 U.S. 90, 96 (1980)). After entry of a state court final judgment, a federal habeas petitioner cannot invoke the flexibility of the law of the case doctrine, Petitioner is limited to the rules governing habeas corpus. See Patterson v. Haskins, 470 F.3d 645, 661 (6th Cir. 2006). Finally, Petitioner cannot assert a new claim for the first time in his Reply. See Cacoperdo v. Demosthenes, 37 F.3d 504, 508 (9th Cir. 1994). For these reasons, this Court will not analyze those portions of Petitioner's claim.

This Court may grant habeas relief under the "unreasonable application" clause of § 2254(d) if the state court "identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Petitioner claims this Court should grant habeas relief because his sentence is grossly disproportionate to his crime. (Doc. No. 4 at 6.) Petitioner first argues his sentence is excessive because he acted without the intent to cause great bodily injury. Second, Petitioner contends that a comparison of similar crimes in California illustrates the disproportionality of his sentence compared to his crime and mental culpability. Third, Petitioner asserts the sentence is cruel and unusual in light of the trial court's findings regarding (1) his limited parenting skills and the stress involved in taking care

of two young children, (2) his lack of a prior criminal record, (3) the unintentional nature of the act, (4) his attempt to find medical help for his son after he was injured, and (5) the severe nature of his sentence as compared to similar crimes involving similar mental states. (Doc. No. 15 at 8-9.) This Court disagrees and concludes that the state court's decision was not objectively unreasonable.

### 1. Petitioner's Sentence is Constitutional in the Abstract

In Petitioner's case, the California Court of Appeal first examined whether the sentencing statute, viewed in the abstract, prescribed a sentence constituting cruel and unusual punishment under the Eighth Amendment. Lewis, 120 Cal. App. 4th at 855, 15 Cal. Rptr. 3d at 903. The court of appeal evaluated "(1) the nature of the offense, (2) a comparison with the punishment imposed for more serious crimes in California and (3) a comparison with the punishment imposed for the same or similar offenses in other jurisdictions." Id. These three factors are essentially the same as those set forth in Solem. See Solem, 463 U.S. at 292.

#### i. The Gravity of the Offense and Harshness of the Penalty

A court evaluating the first Solem factor examines the "harm caused or threatened to the victim or society and the culpability of the offender." Solem, 463 U.S. at 292. Relevant facts are "whether the crime was violent in nature and whether the offense was directed at a person or at property." Cocio v. Bramlett, 872 F.2d 889, 892 (9th Cir. 1989) (citing Solem, 463 U.S. at 292-93). The individual's mental state is also relevant; however, "a reckless indifference to the value of human life may be every bit as shocking to the moral sense as an intent to kill." See id. (citing Tison v. Arizona, 481 U.S. 137, 157 (1987)). If analysis of the first Solem factor does not give rise to an inference of disproportionality, the Court may end its inquiry into the constitutionality of Petitioner's sentence and need not consider the other Solem factors. Harmelin, 501 U.S. at 1005 (Kennedy, J., concurring); see also Taylor v. Lewis, 460 F.3d 1093, 1002 (9th Cir. 2006).

The California Court of Appeal concluded that Petitioner committed a "very serious offense." People v. Lewis, 120 Cal. App. 4th at 855, 15 Cal. Rptr. 2d at 903. "Not only does the crime require the killing of an extremely vulnerable child, it requires an assaultive act of

great violence by one charged with the child's care." Id. The Supreme Court has found far less grievous offenses to be serious offenses. For example, in Ewing v. California, 538 U.S. 11 (2003), the Supreme Court concluded that stealing approximately $1200 worth of merchandise was a serious offense. See Ewing, 538 U.S. at 28. Consequently, the state court's finding that Petitioner's offense was very serious was not objectively unreasonable.

Petitioner was convicted of a violent crime. Petitioner caused the death of his four-month-old son when, in anger and frustration, he shook the child violently. See Lewis, 120 Cal. App. 4th 846, 856, 15 Cal. Rptr. 3d at 896, 904. Crimes that involve violence or the threat of violence are more serious than nonviolent crimes. Solem, 463 U.S. at 292-93. Therefore, the violent nature of Petitioner's crime weighs strongly-against any finding of disproportionality.

Additionally, the availability of parole to Petitioner lessens any alleged harshness of Petitioner's sentence. Petitioner was sentenced to a term of imprisonment that provides for the possibility of parole after twenty-five years. Life sentences without the possibility of parole are far more severe than sentences with the possibility of parole. See Solem, 463 U.S. at 297; see also Cocio, 872 F.2d at 893 (acknowledging that availability of parole is "an important factor in determining the harshness of the penalty").

Petitioner emphasizes that he was a twenty-five-year-old with limited parenting skills when he committed the crime. Youth is a relevant circumstance to consider in conducting an Eighth Amendment disproportionality analysis. See Thompson v. Oklahoma, 487 U.S. 815, 835 (1988)). The California Court of Appeal considered Petitioner's age and other factors and concluded that his sentence was not grossly disproportionate. While age is one consideration, it is not the only consideration, and the state court's conclusion that Petitioner's sentence was not disproportionate in light of his age is not objectively unreasonable.

Petitioner also asserts the sentence was disproportionate to his crime because he had no criminal record. Courts have often recognized that state legislatures have an interest in providing more serious punishments for recidivist offenders with long criminal histories. See, e.g., Ewing, 538 U.S. at 24-25; Parke v Raley, 506 U.S. 20, 27 (1992); Ramirez v. Castro, 365

1  F.3d 755, 769 (9th Cir. 2004). But that is not to say that legislatures only have an interest in
2  prescribing harsh punishments for repeat offenders. "[F]ederal courts should be '[reluctant]
3  to review legislatively mandated terms of imprisonment...'" <u>Davis</u>, 454 U.S. at 374 (quoting
4  <u>Rummel</u>, 445 U.S. at 274); <u>see also</u> <u>United States v. Zavala-Serra</u>, 853 F.2d 1512, 1518 (9th
5  Cir. 1988) ("Generally, as long as the sentence imposed on the defendant does not exceed
6  statutory limits, we will not overturn it on [E]ighth [A]mendment grounds.").

7  Based on this analysis of the first <u>Solem</u> factor, this Court concludes that Petitioner's
8  case does not raise an inference of gross disproportionality.

### ii. Sentences for Other Crimes in California

10  Petitioner argues that his punishment is cruel and unusual because he received the same
11  sentence as a person convicted of first-degree murder even though Petitioner's crime was less
12  serious. <u>Lewis</u>, 120 Cal. App. 4th at 856-57, 15 Cal. Rptr. 3d at 903-04. Petitioner also
13  emphasizes that he did not act with the intent to kill in the commission of his crime. <u>Id.</u> The
14  court of appeal rejected this argument, emphasizing that neither first-degree felony murder nor
15  California's three strikes law require an intent to kill or any other malice aforethought. <u>Id.</u> at
16  856, 15 Cal. Rptr. 3d at 904.

17  Moreover, the state court noted that the Supreme Court has upheld life sentences for
18  nonviolent first-time and repeat offenders. <u>Id.</u> at 855, 15 Cal. Rptr. 3d at 903. Because "a
19  sentence of life without parole is not cruel and unusual punishment for certain nonviolent
20  offenses, then, a fortiori, a sentence of 25 years to life is not cruel and unusual for the death
21  of a child under age eight." <u>Id.</u> (quoting <u>People v. Norman</u>, 109 Cal. App. 4th 221, 230, 143
22  Cal. Rptr. 2d 658 (Ct. App. 2003)).

23  This Court concludes that the California Court of Appeal's finding that Petitioner's
24  sentence was not disproportionate when compared to sentences for other crimes in California
25  is not objectively unreasonable.

### iii. Sentences for the Same Crime in Other Jurisdictions

27  The state court found that no other state had a child abuse statute analogous to Penal
28  Code section 273ab and therefore did not perform an analysis of the third <u>Solem</u> factor. <u>People</u>

1  v. Lewis, 120 Cal. App. 4th at 856, 15 Cal. Rptr. 3d at 904.  The state court's finding on this
2  factor is not objectively unreasonable.

3      **2.    Petitioner's Sentence is Constitutional as Applied to Petitioner**

4      The California Court of Appeal also analyzed the constitutionality of Petitioner's
5  sentence as applied to Petitioner.  The state court considered "the circumstances of the offense,
6  including the defendant's motive, the extent of the defendant's involvement in the crime, the
7  manner in which the crime was committed, the consequences of the act, the defendant's age
8  and history of criminality and the defendant's mental capabilities."  Lewis, 120 Cal. App. 4th
9  at 856, 15 Cal. Rptr. 3d at 904 (citing People v. Cox, 30 Cal. 4th 916, 970, 70 P.3d 277, 310,
10 135 Cal. Rptr. 272, 312 (2003)).  Although Lewis was a "relatively young man without a
11 criminal record," the court found his sentence was not disproportionate to his culpability in
12 light of the amount of force he used to inflict Jace's injuries and the amount of anger that
13 fueled the assault.  Id.  The state court correctly analyzed the constitutionality of Petitioner's
14 sentence as applied to Petitioner and did not unreasonably apply the law to the facts of
15 Petitioner's case.  This Court therefore denies habeas relief on this ground.

17                                        **Conclusion**

18     For the reasons stated above, the Court ADOPTS the report and recommendation and
19 DENIES Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The
20 Court also denies a certificate of appealability.

21 IT IS SO ORDERED.

22 DATED: April 21, 2009

23                                                          _____
24                                                    MARILYN L. HUFF, District Judge
                                                    UNITED STATES DISTRICT COURT

25 COPIES TO:
26 All parties of record.